**BOARD OF PUBLIC UTILITY COMMISSIONERS of the State OF NEW JERSEY and The State of New Jersey, Plaintiffs,**

**v.**

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

**Erie Railroad Company and New York, Susquehanna & Western Railroad Company, Intervenors.**

**Civ. No. 802–57.**

United States District Court
D. New Jersey.
Dec. 10, 1957.

Grover C. Richman, Atty. Gen., of New Jersey by David D. Furman, Trenton, N. J., and Joseph P. Lordi, Newark, N.

J., Herman Scott, Asst. U. S. Atty., Newark, N. J., John H. Wigger, and Charles H. Johns, Jr., Washington, D. C., for the United States, and Interstate Commerce Commission.

James M. Davis, Jr., Mount Holly, N. J., for Brotherhood of Railroad Trainmen, Brotherhood of Locomotive Engineers.

Emory, Langan, Lamb & Blake, Jersey City, N. J., for Erie Railroad Co. by Raymond J. Lamb, Jersey City, N. J., Lum, Fairlie & Foster, Newark, N. J., for Susquehanna Railroad Co. by Leon Leighton, New York City.

Before McLAUGHLIN, Circuit Judge, and SMITH and WORTENDYKE, District Judges.

McLAUGHLIN, Circuit Judge.

The New Jersey agency administering that state's regulatory powers over public utilities and the state itself bring this action [1] which is in effect an appeal from the order of the Interstate Commerce Commission dated August 14, 1957, which, on the petition of the present plaintiffs for reconsideration and modification of effective date, affirmed its jurisdiction and sustained its Report and Certificate of June 26, 1957, permitting abandonment of Erie Railroad Company's passenger ferry service across the New York Harbor between Jersey City, New Jersey and New York City, New York and abandonment of use of that service by the New York, Susquehanna and Western Railroad Company and the Trustee of the New Jersey and New York Railroad Company. The two railroads and the Brotherhoods of Railroad Trainmen and Locomotive Engineers have been allowed to intervene, the railroads as defendants, the brotherhoods as plaintiffs. The operation of the ferry by a predecessor of the Erie dates back to 1856. The original authorization for the ferry was for carriage of both passengers and freight.

The identical and decisive jursdictional problem decided by this court today in Board of Public Utility Commissioners of the State of New Jersey v. United States of America (New York Central Weehawken Ferry suit), D.C., 158 F. Supp. 98, appears in this case.

As in the New York Central action, the Commission asserts that it possesses the authority to allow the discontinuance of the Erie ferry by virtue of Section 1(18) of the Interstate Commerce Act, inserted by 41 Stat. 477 (1920), as amended 49 U.S.C.A. § 1(18). This reads:

"No carrier by railroad subject to this chapter shall undertake the extension of its line of railroad, or the construction of a new line of railroad, or shall acquire or operate any line of railroad, or extension thereof, or shall engage in transportation under this chapter over or by means of such additional or extended line of railroad, unless and until there shall first have been obtained from the commission a certificate that the present or future public convenience and necessity require or will require the construction, or operation, or construction and operation, of such additional or extended line of railroad, and no carrier by railroad subject to this chapter shall abandon all or any portion of a line of railroad, or the operation thereof, unless and until there shall first have been obtained from the commission a certificate that the present or future public convenience and necessity permit of such abandonment. * * *"

The factual situation as far as the Commission's jurisdiction is concerned is substantially similar to that in the New York Central litigation where, as in this suit, it was the passenger ferry service alone that was sought to be abandoned. As the Commission states in its report on the petition for reconsideration in the matter: *"There (New York Central case), as in the present proceeding,* the same petitioners con-

---

[1]. Under 28 U.S.C. §§ 1336, 1398, 2284, 2321–2325 and 5 U.S.C.A. § 1009.

tended we were without jurisdiction to consider requests to abandon a 'ferry', or to permit abandonment of only passenger operations if the applicant also transported freight between the same points and would continue to do so after abandonment of the ferry. * * * *The record supports the conclusion that the equivalent of the situation there exists here.* " (Emphasis supplied)

We add very briefly that the Erie passenger and freight rail services come into its Jersey City terminus for water transportation across New York Harbor to the end, or rather the beginning, of the line, New York City. The Commission found, much as in its New York Central opinion, that:

> "The record clearly shows that the ferry terminals, vessels and other passenger facilities and services of Erie are maintained physically separate from the car float and lighterage equipment and other facilities used in the transporting freight (sic) across the Hudson River and that the routes of the water freight service are entirely different from the route of Erie's Chamber Street ferry line."

As in the Central litigation there is nothing substantial in the record before us to justify the Commission holding that there is such a distinction between the passenger and freight ferry services of the one line coming into Jersey City after these services are water-bound for the railroad's terminus, New York City, as to turn them from one railroad line into two or more.

The passenger and freight ferries have the one general superintendent; they have the one set of repair facilities. The freight trains of the line do not unload or load in the passenger terminal at Jersey City. That would be extraordinary practice of which there may be

an isolated instance, though none has been brought to our attention. The freight depot is adjacent to the passenger station. The freight ferries are immediately north of the Erie Jersey City passenger ferry slips. On the Manhattan side, the freight carfloats and lighters of course do not land in the passenger ferry slips. As we pointed out in the New York Central opinion, for the speedy and comfortable water transportation of human beings, special passenger boats are furnished, and the freight is delivered on its own special water conveyances, on its own convenient schedules, to adjoining piers or where trackage is available for the freight cars on the floats.

Common sense governs the methods of passenger and property water transportation by the Erie Railroad line to and from its final destination, New York City. But common sense does not support the proposition that the mere dropping of the harbor passenger service from its passenger and freight carrying railroad into New York City brings the Erie within Section 1(18) of the Act and empowers the Commission to permit the discontinuance.

As in our New York Central decision, because we are satisfied that in this matter also the Commission is without jurisdiction to permit the defendant railroad to abandon its passenger ferry service, we will not, at this time, pass upon the other questions raised by the plaintiffs.

Such findings of fact and conclusions of law as are necessary to our decision are expressed in this opinion.

The order of the Commission dated August 14, 1957, affirming its jurisdiction and sustaining its Report and Certificate of June 26, 1957, is in excess of the statutory powers of the Commission and will be set aside and for nothing holden. Decree to be submitted.